## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SHERMAN ANDERSON MORTON III, *et al*, ) | |
| Plaintiffs, ) | **Case No.: 1:20-cv-03211-TWT-JKL** |
| ) | |
| v. ) | **PLAINTIFFS' OBJECTIONS TO** |
| ) | **REPORT & RECOMMENDATION** |
| LIEN FILERS, ETC. OF HEATH W. ) | |
| WILLIAMS, L.L.C., *et al*, ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S OBJECTIONS TO REPORT & RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(b)(2) and 11th Cir. R. 3-1, Plaintiffs submit the following Objections to the Order and Final Report & Recommendation submitted by Magistrate Judge John K. Larkins III in this matter:[1]

## I.      PRELIMINARY STATEMENT

Defendants sent the following email to Plaintiffs' lawyer relating to a consumer debt:

---

[1] [Docket # 86.]

1

12/31/2019                                    Daniels Law LLC Mail - TIGESKI vs Morton

Daniels ⱐ Law                                                                                    Ron

**TIGESKI vs Morton**

Heath Williams <heath@hwilliamslaw.com>
To: Ron Daniels <ron@dlawllc.com>

I've just talked to my client and they'll accept the $2,000 and split their attorneys fees to date of $900.00. That would mean this would resolve for $2,450.00.

Heath                                                                                              2

The Report concludes that no reasonable juror could view this email as debt collection activity.[3]  For this reason, and those others detailed below, Plaintiffs ask this Court to reject the Report & Recommendation and deny Defendants' motion for summary judgment.  This case has genuine issues of material fact—especially when the evidence is viewed in favor of Plaintiffs—and should go to a jury.

## II.   STANDARD OF REVIEW

A party challenging a magistrate judge's proposed findings and recommendations must do so by filing "specific written objections" to the report. Fed. R. Civ. P. 72(b)(2).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  The district judge must give "fresh consideration to those issues to

---

[2] Excerpt of Exhibit 5 to Pls.' Resp. in Opp. to Defs.' Mot. for Summary J. [Docket # 80-7].

[3] Magistrate Judge Larkins writes in the Report: "[e]ven so—and still viewing the evidence in the light most favorable to Plaintiffs—no reasonable jury could conclude that that email qualified as debt collection activity." [Docket # 86 p. 24].

which specific objections have been made." *Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990)(*citing* H.R. Rep. No. 94-1609, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S. Code Cong. & Admin. News 6162, 6163).

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and that the movant *is entitled to judgment as a matter of law*." Fed. R. Civ. P. 56(a) (*emphasis* added). "In resolving motions for summary judgment, the Court must view the evidence ***in the light most favorable to the nonmoving party***." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (***emphasis*** added). As articulated in the specific written objections below, there are genuine issues of material fact, and Defendants should not be granted summary judgment as a matter of law. Instead, this case should go to a jury.

## III.   SPECIFIC WRITTEN OBJECTIONS

### A.   Objections to Specific Findings of Fact.

>   *1.   The Report correctly finds that Defendants agree that Mr. Williams sought to collect $450.00 more than the $2,000.00 Tigeski LLC agreed to accept in settlement.*

It is important to begin with the fact that the Report acknowledges Defendants sought to collect $450.00 more than the $2,000.00 their client, Tigeski

3

LLC, agreed to accept in settlement.[4]  In short, there is no dispute that Defendants sought to collect more than the settlement amount offered by Plaintiffs to Tigeski LLC, and to which Tigeski LLC communicated acceptance.

> 2.  *The Report incorrectly rejected Defendants' own acknowledgement that a settlement existed between Plaintiffs and Tigeski LLC.*

Defendants acknowledge a settlement existed between Plaintiffs and Tigeski LLC.[5]  Defendants do not dispute this, and even argue that one does exist in their motion for summary judgment.[6]  The Report rejects Defendants' own acknowledgement that the settlement between Plaintiffs and Tigeski LLC was enforceable.  Plaintiffs object to this conclusion in the Report because it ignores facts and arguments contradicting its own conclusions in a manner that favors the moving parties—Defendants—rather than the non-moving parties—Plaintiffs.

> 3.  *The Report infers that counsel in the state collection case— Ronald Daniels and Mr. Williams—did not know whether a*

---

[4] The Report states: "Defendants concede that in this communication, Mr. Williams 'sought to collect $450.00 more than the $2,000 Tigeski LLC agreed to accept in settlement.'" [Docket # 86 p. 8].

[5] The Report states: "Defendants next argue that because Tigeski accepted the terms of the offer on December 19, 2019, all later communications between Mr. Williams and Mr. Daniels are 'irrelevant because Plaintiffs knew the alleged debt had already been negotiated and resolved.'" [Docket # 86 p. 10].

[6] *Id.*

> *settlement existed despite no evidence to support this, and contradicting evidence that an enforceable settlement existed.*

The Report infers that "at the time of Mr. Williams's email, both Mr. Williams and Mr. Daniels were unsure as to whether a binding settlement had been reached."[7]  To be clear, there is no direct statement by Plaintiffs' counsel in the collection lawsuit—Mr. Daniels—that he believed no binding settlement had been reached.  Instead, the Report infers this based on Mr. Daniels' statements that Plaintiffs would "proceed accordingly,"[8] and that he "assume[d]" Tigeski was "no longer interested in resolving the matter."[9]  These are inferences drawn by Magistrate Judge Larkins in the Report, and they are drawn in favor of Defendants despite the Report correctly stating that "[i]n evaluating a summary judgment motion, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.'"[10]

Not only are these inferences drawn in favor of the moving party, they ignore statements made in Mr. Daniels' declaration indicating he believed the settlement was enforceable.  Mr. Daniels states in his declaration:

---

[7] [Docket # 86 p. 26.]
[8] [Docket # 86 p. 27.]
[9] *Id.*
[10] [Docket # 86 pp. 13-14] (internal citations omitted).

- "The December 19, 2019, email from Sue Jefcoat on behalf of Tigeski LLC accepted the settlement offer contained in the December 11, 2019 settlement letter sent to Mr. Williams."[11]

- "Tigeski LLC contacted me accepting the offer of settlement."[12]

- "At this point, it was clear that Tigeski LLC, through their attorney, was refusing to honor the settlement they accepted."[13]

- "I advised the Mortons that we would need to file a motion to enforce the settlement, and pay costs to open the default and file the answer."[14]

Not only does the Report draw this conclusion using inferences in favor of the moving party, it ignores argument and facts to the contrary from the moving parties—Defendants—themselves.   Defendants, in their brief in support of summary judgment, argue that the state collection lawsuit was settled.[15]   Mr. Williams, in his affidavit, states that "Plaintiffs and ATTORNEY DANIELS knew

---

[11] Daniels Decl. ¶ 19 [Docket # 80-18 p. 3].
[12] Daniels Decl. ¶ 49 [Docket # 80-18 p. 6].
[13] Daniels Decl. ¶ 73 [Docket # 80-18 p. 9].
[14] Daniels Decl. ¶ 75 [Docket # 80-18 p. 10].
[15] *See* Defs.' Br. In Support of Summ. J.: "In fact, ATTORNEY DANIELS knew that the settlement was binding because he sent a release to Attorney WILLAIMS and copied TIGESKI."  [Docket # 76-1 p. 16].

or had reason to believe that the debt/Magistrate Action was settled."[16] Defendants' own evidence and argument contradicts the inferences and conclusions drawn in their favor by the Report.

Given contradicting evidence, and argument, as to whether or not the parties were subjectively unsure whether the case was settled—an issue not raised by either sets of parties in the motion for summary judgment—the Report errs in concluding the attorneys in the collection action were unsure whether an enforceable settlement had been reached.  Accordingly, Plaintiffs' object to this conclusion in the Report.

> 4.  *The Report ignores evidence showing that the $900 in attorneys' fees claimed in the 31 December collection email from Defendants was incorrect from Defendants' own evidentiary submissions.*

The Report rejects evidence that the $900 in alleged attorneys' fees claimed by Defendants in the 21 December collection email was incorrect.  The Report rejects evidence presented by Plaintiffs that the charge would be for a $775 flat fee, not $900, because Plaintiffs failed to expressly include this claim in their Statement of Additional Material Facts.[17]  This is a harsh result, but even if this Court adopts

---

[16] Williams Decl ¶ 24 [76-3 p. 7].
[17] [Docket # 86 pp. 28-29].

this result it does not erase all evidence that attorneys' fees in the collection lawsuit were less than the claimed $900.  Notably, the Report fails to address at all the evidence in the Statement of Claim filed in the collection lawsuit that the attorneys' fees were actually only $525.[18]

Plaintiffs object to the conclusion that the $900 demanded in attorneys' fees in the 31 December collection email could not be viewed as incorrect.  Evidence exists in the record showing that this amount is not correct—including not just the evidence rejected by the Report, but evidence submitted by Defendants themselves in the form of the Statement of Claim that expressly identifies the attorneys' fees to be $525.  This creates genuine issues of material fact as to this question, and those issues should be resolved by a jury.

B.   <u>The Report raised new issues for the first time that were not raised by the parties in the motion for summary judgment without providing Plaintiffs reasonable notice and an adequate opportunity to respond to brief those issues.</u>

The core argument in the Report for the conclusion that Defendants' motion for summary judgment should be granted is the idea that the settlement agreement

_____

[18] *See* Statement of Claim Filed In The Collection Lawsuit [Docket # 76-3 p. 28, <u>Ex. E</u>]; Pls.' Resp. In Opp. To Mot. For Summ. J. pp. 10 [Docket # 80 p. 10].

in the state lawsuit was not enforceable.[19]  This is an issue not raised by either sets of parties in the motion for summary judgment, and was instead raised for the first time by Magistrate Judge Larkins in the Report itself.  Neither party had an opportunity to brief this issue, or present evidence on this issue, prior to the Report's issuance.

The Supreme Court recognizes that "[i]n our adversarial system of adjudication, we follow the principle of party presentation."[20]  The Supreme Court in *Sineneng-Smith* states that "in both civil and criminal cases, _in the first instance_ and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."[21] "'[C]ourts are essentially passive instruments of government.'  They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.'"[22]

At the trial court level—_the first instance_—this idea is represented in part by Fed. R. Civ. P. 56(f)(2), which permits a district court the ability to grant summary

---

[19] *See, e.g.*, Report & Recommendation [Docket # 86 pp. 26, 28, 30, 31].
[20] *United States v. Sineneng-Smith*, 590 U. S. ____, 140 S.Ct. 1575, 1579 (2020).
[21] *Id.* (_emphasis_ added and internal citations omitted).
[22] *Id.* (internal citations omitted).

judgment "on grounds not raised by a party," but only "[a]fter giving notice and a reasonable time to respond."[23]   The Eleventh Circuit recognizes that the requirement that a party be given notice, and a reasonable time to respond, "'is not an unimportant technicality, but a vital procedural safeguard' subject to strict enforcement."[24]   Granting summary judgment on an issue not raised by the parties, and without notice and a reasonable time to respond, is a reversible error.[25]

In this case, Magistrate Judge Larkins did notice oral argument on the motion for summary judgment.[26]   However, the Notice of Hearing provided no notice that Magistrate Judge Larkins intended to make the enforceability of the underlying settlement agreement an issue in his Report.[27]   While Magistrate Judge Larkins did question Plaintiffs' counsel on this issue at the hearing, no notice

---

[23] Fed. R. Civ. P. 56(f)(2).

[24] *Ga. State Conf. of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1344 (11th Cir. 2015).

[25] *Fayette Cnty. Bd. of Comm'rs*, 775 F.3d at 1344 (summary judgment reversed when notice and reasonable time to respond to an issue not raised by the parties is not provided); *Amy v. Carnival Corp.*, 961 F.3d 1303, 1310-11 (11th Cir. 2020) (lack of notice and reasonable time to respond to an issue not raised by the parties is a reversible error); *Gentry v. Cottages–Stuart*, 654 F.3d 1247, 1261 (11th Cir. 2011) (failure to give notice and opportunity to respond to an issue not raised by the parties is a reversible error).

[26] Notice of Hearing on Motion [Docket # 84].

[27] *See id.* (the notice of hearing identifies no issues or topics and only identifies the motion for summary judgment as the topic).

requesting supplemental filings on the issue, or an opportunity to address any factual issues with new submissions, was provided.[28]

This prejudiced Plaintiffs by denying them an opportunity to reasonably respond to an issue not raised by Defendants in their motion.  In fact, in their motion, Defendants acknowledged the settlement was enforceable, indicating to Plaintiffs no need to address the issue in their response.  If given the opportunity to address this issue, Plaintiffs could produce evidence contradicting the Report's conclusion that the attorneys in the collection lawsuit were unsure whether an enforceable settlement existed through the testimony of Mr. Daniels, one of the attorneys at issue.  Further, Plaintiffs could produce evidence showing the clear and definite offer made to Tigeski LLC to settle, and Tigeski LLC's unconditional, unequivocal, acceptance of the offer on identical terms without variance of any sort.  Further, Plaintiffs could address the requirements under Georgia law for the enforceability of settlement agreements.

---

[28] No notice of the issue on enforceability of the settlement in the collection lawsuit was provided, and no opportunity to timely respond was offered. *See, generally, id.*; Minute Entry for Proceedings Held [Docket # 85] (identifying no request for supplemental filings on the issue of the settlement's enforceability, or an opportunity to present new evidence on the issue).

This Court should reject the conclusions of the Report because it granted summary judgment in favor of Defendants on issues not raised by the parties in the their respective motion and response, and failed to provide notice to the parties, or a reasonable opportunity to respond, prior to doing so.  This prejudiced Plaintiffs, denying them an opportunity to provide contradictory evidence or adequately address the legal conclusion reached by the Report.

C.  <u>The Report incorrectly concludes the settlement between Plaintiffs and Tigeski LLC was not enforceable despite well-settled Georgia law determining otherwise.</u>

The settlement between Plaintiffs and Tigeski LLC was enforceable under well-settled Georgia law.   The Report details the settlement terms offered by Plaintiffs to Tigeski LLC (through its lawyer, Mr. Williams):

> My clients are willing to pay the sum of $2,000.00 to [Tigeski] in an effort to resolve all of these interrelated claims. Should [Tigeski] not accept this offer by close of business on December 20, 2019, we will be filing responsive pleadings including a counterclaim against [Tigeski] and seeking to have the case transferred to State Court.[29]

These terms are clear and unambiguous.  Plaintiffs' offer is to settle the lawsuit— all interrelated claims—with Plaintiffs paying Tigeski LLC $2,000.  This, by its language, ***includes any claims for attorneys' fees Tigeski LLC might have***.  The

---

[29] [Docket # 86 p. 5].

Report also acknowledges that Sue Jefcoat, an employee, directly emailed Mr. Daniels—counsel for Plaintiffs in the collection lawsuit—accepting the offer.[30]

This acceptance was unequivocal, unambiguous, and did not vary the terms offered by Plaintiffs: "I received your December 11th letter today regarding the Dekalb Co. case and offer to settle. TIGESKI LLC dba Emergency Water Removal accepts the offer[.]"[31]  Not only was this acceptance emailed to Plaintiffs' attorney, it was sent by Tigeski LLC via USPS mail as well.[32]  Tigeski LLC even circled the date of acceptance in this hardcopy version for good measure.[33]

Whether a settlement agreement, which is fundamentally a contract and analyzed as such,[34] is enforceable is, in the first instance, a question of law.[35]  A

---

[30] [Docket # 86 p. 5].

[31] 19 Dec. 2019 Email from Tigeski LLC Accepting Settlement Offer [Docket 80-5 p. 2].

[32] Daniels Decl. ¶¶ 17-18, **Ex. D** [Docket # 80-18 pp. 3, 23-25].

[33] Daniels Decl. ¶ **Ex. D** [Docket # 80-18 pp. 23-25].

[34] Settlement agreements are fundamentally contracts, and are analyzed as such. *See Interfinancial Midtown, Inc. v. Choate Const. Co., 284 Ga. App. 747, 644 S.E.2d 281 (2007)*; *Turner v. Williamson*, 738 S.E.2d 712 (Ga. Ct. App. 2013); *Oldham v. Self*, 279 Ga. App. 703, 632 S.E.2d 446 (2006); *DeRossett Enterprises, Inc. v. General Elec. Capital Corp.*, 275 Ga. App. 728, 621 S.E.2d 755 (2005); *Moore v. Farmers Bank of Union Point*, 184 Ga. App. 86, 360 S.E.2d 640 (1987); *accord* Larkins, GA. CONTRACTS LAW AND LITIGATION § 12A:1 (2d ed. *September 2021 Update*).

[35] *Old Peachtree Partners, LLC v. Gwinnett County*, 315 Ga. App. 342, 726 S.E.2d 437 (2012); *USA Mfg. Corp. v. Perfection-Schwank, Inc.*, 271 Ga. App. 636, 610

settlement offer "must be accepted unequivocally and without variance of any sort."[36]   Here, Tigeski LLC unequivocally accepted Plaintiffs offer without variance.  Defendants have not disputed this in their motion.

While it is true that "[a] purported acceptance of a plaintiff's settlement offer which imposes conditions . . . will be construed as a counter-offer,"[37] Tigeski LLC's acceptance imposed no conditions in its acceptance.[38]   Tigeski LLC does state that "[i]f you wish to provide an agreement letter or settlement agreement I'd be glad to look it over," but this is not a condition necessary to Tigeski LLC's acceptance of the settlement—this is at most an expression of willingness to negotiate additional details if Plaintiffs so desired.   A willingness to negotiate additional details or terms to a settlement does not invalidate an accepted offer of settlement.[39]

---

S.E.2d 600 (2005); *accord* Larkins, GA. CONTRACTS LAW AND LITIGATION § 12A:7 (2d ed. *September 2021 Update*).

[36] *Frickey v. Jones*, 630 S.E.2d 374, 376, 280 Ga. 573, 574 (Ga. 2006); *accord* Larkins, GA. CONTRACTS LAW AND LITIGATION § 12A:3 (2d ed. *September 2021 Update*).

[37] *Frickey*, 630 S.E.2d at 376, 280 Ga. at 574.

[38] *See* 19 Dec. 2019 Email from Tigeski LLC Accepting Settlement Offer [Docket 80-5 p. 2].

[39] *Buckner v. Buckner*, 294 Ga. 705, 707, 755 S.E.2d 722, 725 (2014) ("[t]he fact that the parties continued to negotiate various additional details to the settlement agreement after they announced a settlement had been reached by exchanging

Plaintiffs object to the Report's conclusion that no enforceable settlement agreement existed in the state lawsuit.  Plaintiffs made a clear offer to settle the collection lawsuit to Tigeski LLC through its attorney, Heath Williams.  Tigeski LLC clearly, unambiguously, and unequivocally accepted this settlement offer by both email and written mail, and its acceptance did not vary the original offers' terms.  All of this was done in writing, and Defendants do not dispute this—they even argue an enforceable settlement existed in their own motion for summary judgment.[40]  This Court should reject this conclusion in the Report, and because this finding is the linchpin of the Report's recommendations, also deny Defendants' motion for summary judgment.

---

versions of a proposed consent order is not evidence, in this case, that the parties had not reached an enforceable agreement regarding settlement of the marital estate."); *Superglass Windshield Repair, Inc. v. Mitchell*, 233 Ga. App. 200, 202, 504 S.E.2d 38, 41 (1998) ("[w]e also point out that the subsequent negotiations by the parties after settlement was reached with regard to other terms relating to default and damages does not vitiate the June 4, 1997 settlement"); *accord* Larkins, GA. CONTRACTS LAW AND LITIGATION § 12A:3 (2d ed. *September 2021 Update*) ("where a settlement agreement has been reached, subsequent negotiations regarding other terms will not vitiate the agreement").

[40] The Report states: "Defendants next argue that because Tigeski accepted the terms of the offer on December 19, 2019, all later communications between Mr. Williams and Mr. Daniels are 'irrelevant because Plaintiffs knew the alleged debt had already been negotiated and resolved.'"  [Docket # 86 p. 10].

D.   The Report makes numerous inferences ***in favor of Defendants***, the moving parties, in direct contradiction to well-settled law on the motion for summary judgment standard.

The Report makes numerous inferences in favor of Defendants, the moving parties, in direct contradiction to well-settled law on the motion for summary judgment standard.   The Report correctly states that "[i]n evaluating a summary judgment motion, '[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.'"[41]   "In resolving motions for summary judgment, the Court must view the evidence ***in the light most favorable to the nonmoving party***." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (***emphasis*** added).

Yet, the Report draws inferences in favor of Defendants in this case, rather than in Plaintiffs' favor.   These inferences are numerous—too numerous to itemize in this objection.   For example, the Report concludes:

- that counsel in the collection lawsuit were unsure whether an enforceable settlement existed;[42]

---

[41] [Docket # 86 pp. 13-14] (internal citations omitted).
[42] [Docket # 86 p. 26.]

- that no reasonable jury could find the 31 December Collection Email could be viewed as collection activity, or made in connection with an attempt to collect a debt;[43] and

- that the least-sophisticated consumer could not be "misled, deceived, or otherwise duped" by a demand for more money than permitted by law or contract.[44]

These are only some of the examples, but at its core the Report goes out of its way to make inferences in favor of Defendants, rather than viewing evidence in the light most favorable to Plaintiffs or making inferences in their favor. Nevertheless, Plaintiffs, as the non-moving party, should be given the deference,[45] and this Court should reject the Report because it repeatedly fails to do so.

     E.     <u>The Report too narrowly construes the definition of **communications** made in an attempt to collect a debt in contradiction to Eleventh Circuit precedent.</u>

          1.     *The Eleventh Circuit construes consumer statutes like the FDCPA broadly.*

The Eleventh Circuit construes consumer statutes like the FDCPA broadly.

*Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 950 (11th Cir.

---

[43] [Docket # 86 pp. 25-26.]
[44] [Docket # 86 p. 30.]
[45] *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

2016)(construing the FDCPA broadly); *see Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 707 (11th Cir. 1998) (in a TILA action, holding that a consumer protection statute "is remedial in nature and therefore must be construed liberally in order to best serve Congress' intent"); *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) ("[b]ecause the FDCPA is a remedial statute, [courts] construe its language broadly . . . .").

2. *The Eleventh Circuit expansively defines "communications" subject to the FDCPA. This Court should do so as well, and reject the Report's narrow definition of "communication" subject to the FDCPA.*

The Eleventh Circuit expansively defined "communications" subject to the FDCPA in *Reese v. Ellis, Painter, Ratterree & Adams*, LLP, 678 F.3d 1211, 1218 (11th Cir. 2012), when it adopted the rationale in *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir.1998), to find that communications may have dual purposes. Here, the Report ignores that the communications from Defendants in this case might have dual purposes.

The emails prior to the 31 December Collection Letter were made in connection with a collection lawsuit that sought to collect a debt. The communications from Mr. Daniels clearly related to Defendants' attempts to collect a debt. Mr. Williams emails on behalf of Defendants may have, as the

Report concludes, in part concerned "Mr. Williams's opinion that Mr. Daniels had violated the Georgia Rules of Professional Conduct by communicating directly with a person whom Mr. Daniels knew to be represented[.]"[46]   This does not preclude this Court inferring that, based on their context—especially in light of the 31 December Collection Email's clear efforts to collect a debt—Defendants' emails were made in connection with Defendants' efforts to collect a debt from the Mortons.   After all, communications may have dual purposes[47]—yet the Report ignores this, and instead infers only one purpose for these communications.

The Eleventh Circuit once again cited to *Romea* in *Caceres v. Mccalla Raymer, LLC*, 755 F.3d 1299, 1302 (11th Cir. 2014).   In *Caceres*, the Eleventh Circuit summarized the *Romea* rational to be "that if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act."[48]   In this case, the 31 December Collection Email conveyed information about an alleged debt, and clearly seeks to induce the Mortons to pay—and under *Caceres*, this falls within the scope of the FDCPA.[49]

---

[46] [Docket # 86 p. 23.]
[47] *Reese v. Ellis, Painter, Ratterree & Adams*, LLP, 678 F.3d 1211, 1218 (11th Cir. 2012).
[48] *Caceres*, 755 F.3d at 1302.
[49] *Id.*

F.   <u>Genuine issues of material fact exist for a jury to decide as to whether
the December 31st email is an attempt to collect a debt.  These should
be resolved by a jury.</u>

Genuine issues of material fact exist as to whether the 31 December

Collection Email was an attempt to collect a debt, or was made as part of collection

activity.  The email at issue is as follows:



The Report reluctantly concludes that this clear language could be viewed by "the

least sophisticated consumer as a request for payment of money."[51]  Astonishingly,

even though the Report recognizes that this email might be viewed as a request for

payment of money, the Report goes on further to state that "[e]ven so—and still

viewing the evidence in the light most favorable to Plaintiffs—no reasonable jury

could conclude that that email qualified as debt collection activity."[52]

---

[50] *Excerpt of* Exhibit 5 to Pls.' Resp. in Opp. to Defs.' Mot. for Summary J.
[Docket # 80-7].
[51] [Docket # 86 p. 24.]
[52] [Docket # 86 p. 24.]

The core of this argument is the idea that the settlement in the state lawsuit was unenforceable.[53]  This is addressed in detail *supra* Section III.C.  However, the Report also concludes that "[v]iewing the 'purpose and context' of the communication from a common-sense perspective, the only reasonable way to interpret Mr. Williams's email is as an effort to continue negotiating the amount of a settlement payment to resolve the DeKalb Action, and not toward the collection of a debt."[54]  Plaintiffs object to this conclusion based on its contradiction with the Report's own prior findings, as well as the way in which it strains to make inferences in favor of Defendants, rather than in favor of Plaintiffs.

The Report, just a page prior, concludes that a juror could find this communication to be "a request for payment of money."[55]  Yet, even though this is a request for payment of money—money to satisfy a debt the report acknowledges is a consumer debt,[56] that Defendants are attempting to collect—it is not a communication made "toward the collection of a debt."[57]

---

[53] *See, e.g.*, Report & Recommendation [Docket # 86 pp. 26, 28, 30, 31].

[54] [Docket # 86 pp. 25-26.]

[55] [Docket # 86 p. 24.]

[56] [Docket # 86 p. 16.]

[57] [Docket # 86 pp. 25-26.]

Viewing the facts in favor of Plaintiffs—the non-moving parties in this motion—the 31 December Collection Email is an attempt by Defendants to collect a debt from the Mortons.  Clear, written evidence shows a request for the payment of money.[58]   If Plaintiffs were moving for summary judgment, it might be reasonable to infer that a jury might decide this is not an attempt to collect a debt, and deny Plaintiffs summary judgment.  However, that is not the posture of this motion, nor this case—the clear inference in favor of Plaintiffs is that the 31 December Collection Email was an attempt to collect a debt.

G.   The Report's interpretation of a "materiality" element to 15 U.S.C. § 1692e claims is too narrow, too strict, and not supported by Eleventh Circuit precedent.

The Report rejects the materiality of Defendants misrepresentation of how much they claimed the Mortons owed in attorneys' fees.[59]   The Report's interpretation of a materiality element to 1692e is too narrow, too strict, and not supported by Eleventh Circuit precedent.  Notably, while the Third, Fourth, Sixth, Seventh, Eighth and Ninth Circuits require deception to be material in order be

---

[58] [Docket # 86 p. 24.]
[59] [Docket # 86 p. 30.]

actionable under the FDCPA, 15 U.S.C. § 1692e,[60] the Eleventh Circuit has not expressly joined this approach.  However, even in those jurisdictions that have adopted a materiality requirement, a debt collector's misstatement of the amount due is almost always considered material.[61]  That's exactly the issue in this case.

## IV.   CONCLUSION

The Report raises new issues not presented by the parties in their respective motion for summary judgment and response in opposition thereto.  The Report did so without providing notice of its intent to grant the motion for summary judgment on an issue not raised by Defendants in their own motion, and failed to provide Plaintiffs reasonable time to respond to the newly raised issue.  Moreover, to reach its conclusions, the Report ignores facts in the record, and draws inferences and conclusions in favor the moving party—rather than the non-moving party as

---

[60] *See, e.g.*, *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018); *Coyne v. Midland Funding L.L.C.*, 895 F.3d 1035 (8th Cir. 2018); *Afewerki v. Anaya Law Grp.*, 868 F.3d 771, 776 (9th Cir. 2017); *Elyazidi v. SunTrust Bank*, 780 F.3d 227 (4th Cir. 2015); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420–422 (3d Cir. 2015); *Wallace v. Washington Mut. Bank*, 683 F.3d 323 (6th Cir. 2012); *Wiley v. Portfolio Recovery Assoc.*, 2021 WL 780763 (D. Minn. Mar. 1, 2021).

[61] *See, e.g., Coyne*, 895 F.3d at 1038 (8th Cir. 2018) ("a false representation of the amount of a debt that overstates what is owed under state law materially violated § 1692e(2)(A)"); *Afewerki v. Anaya Law Group*, 868 F.3d 771 (9th Cir. 2017); *Powell v. Palisades Acquisition XVI, L.L.C.*, 782 F.3d 119 (4th Cir. 2014).

required by law.  Even so, Plaintiffs have repeatedly shown this Court that an enforceable settlement agreement existed, that Defendants sought to collect more than permitted by that agreement, and that those efforts caused Plaintiffs concrete injury.  Genuine issues of material fact exist, and this Court should reject the Report and Recommendation in whole, and should deny Defendants' motion for summary judgment as a matter of law.

Respectfully submitted this <u>30 May 2022</u>.

<u>/s/ John William Nelson</u>
John William Nelson
State Bar No. 920108

*Attorney for Plaintiffs*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7.1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5.1(B). The foregoing PLAINTIFFS' OBJECTIONS TO REPORT & RECOMMENDATION was prepared on a computer, using Times New Roman 14-point font.

**DATED:**   <u>30 May 2022</u>.

> <u>/s/ John William Nelson</u>
> John William Nelson
> State Bar No. 920108
>
> *Attorney for Plaintiffs*
>
> The Nelson Law Chambers LLC
> 2180 Satellite Blvd, Suite 400
> Duluth, Georgia 30097
> Ph.    404.348.4462
> Fax.   404.549.6765

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SHERMAN ANDERSON MORTON III,) | |
| an individual, and ASHLYN AIKEN ) | |
| MORTON, an individual, ) | |
| ) | |
| Plaintiff, ) | **Case No.: 1:20-cv-03211-TWT-JKL** |
| ) | |
| v. ) | **CERTIFICATE OF SERVICE** |
| ) | |
| LIEN FILERS, ETC. OF HEATH W. ) | |
| WILLIAMS, L.L.C., a Georgia Limited ) | |
| Liability Company, and HEATH W. ) | |
| WILLIAMS, L.L.C., a Georgia Limited ) | |
| Liability Company, ) | |
| ) | |
| Defendants. ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the undersigned electronically filed PLAINTIFFS'
OBJECTIONS TO REPORT & RECOMMENDATION with the Clerk of Court
using the CM/ECF system, which will automatically send email notification of
such filing to the following attorneys of record:

John W. Nelson
john@nelsonchambers.com

Jason H. Coffman (jcoffman@jcoffmanlaw.com)
Law Office Of Jason H. Coffman
3280 Peachtree RD NE, Ste 700
Atlanta, Georgia 30304

1

*Attorney for Defendants*

John M. Duffoo (John@Duffoolaw.com)
Business Law Firm of John M. Duffoo, P.C.
P.O. Box 767355
Roswell, GA 30076
*Attorney for Defendants*

Clifford Carlson (cc@cliffcarlsonlaw.com)
Cliff Carlson Law, P.C.
1114-C1 Highway 96 #347
Kathleen, Georgia 31047
*Attorney for Plaintiff*

Respectfully submitted this **30 May 2022.**


/s/ John William Nelson
John William Nelson
State Bar No. 920108

*Attorney for Plaintiffs*

The Nelson Law Chambers LLC
2180 Satellite Blvd, Suite 400
Duluth, Georgia 30097
Ph.    404.348.4462
Fax.   404.549.6765

2